and Tunnel, etc., Workers. Mr. Axelrod, am I pronouncing that right? Yes. Okay. So you have 10 minutes, but you've reserved 3 minutes for rebuttal. So just give me a Thank you, Your Honor. May it please the Court, the issue presented here is whether a participant in an ERISA health care plan loses her ERISA rights and ERISA standing. I think even before that, it seems to me there's a constitutional standing issue. So before you even get to the statute, you have to have standing to come into court. And our court has been pretty clear that a power of attorney does not confer standing for the grantee of a power of attorney. And so, I mean, we've got a number of cases that do that. Courtland is one. Huff is another. Advanced Magnetics is a third. Those all deal with constitutional standing. And I don't think you've addressed that or explained why it is or what distinguishes those cases from this case, where your only basis for being here is a power of attorney. Well, the claim is the plan participant's claim, not a provider's claim. Well, I get that, but the plaintiff here is Dr. Korkari, right? Am I pronouncing the same way? Yes. Yeah, he's the plaintiff, right? Look, you could easily, the patient or the participant could easily have brought this claim in her own name, right? Not so easily, and that's the argument, for a number of reasons. Number one, when a patient is going through surgery after surgery, the patient is, it's difficult for the patient to go ahead. And in addition to that, finding a risk of counsel in order to bring the action is somewhat difficult because it's a specialized field. Well, that may be, but none of that confers standing. I mean, the fact that it's difficult to find an attorney, I mean, a person can represent themselves per se, perhaps. But the point is, there's no assignment. There's only a power of attorney, and our case law squarely says that a power of attorney does not confer constitutional standing. So why isn't that just the end of the inquiry? Well, I'm not aware of that, but the issue really here is that this is not the provider's claim, even though the provider is listed as the plaintiff. In fact, the patient, the planned participant, is in fact the plaintiff because it's on behalf of the planned participant. But Dr. Kokari is listed as the plaintiff, right? Dr. Kokari is listed as attorney, in fact, on behalf of the patient, and I think that makes a difference. Well, look, I'm going to, I think, we'll confer, but I mean, I think I'd like you to follow up with supplemental briefing on this constitutional or Article III standing issue in light of the three cases that I mentioned and see why this would be distinguishable. I mean, it seems to me that either you've got the wrong plaintiff here, and so Rule 17 would allow, before a dismissal for lack of standing, would allow J.N. to come in as the proper party, as the plaintiff. But absent an assignment, I don't see how it is that Dr. Kokari has Article III standing here. So let me jump in and- Yeah, no, fine. So let's assume we disagree with the proposition that you're, not that you disagree, let's assume we accept your premise that the notion of evaluating your standing or the power of attorney and client standing is a mismatch for what's happening here. Because the real party in interest, the party who's bringing the claim, is, in fact, the participant. And it's, your client is acting as attorney-in-fact in a representative capacity, but it's your client's name, right? That, as I understand it, is your position. This is just representing the participant's interests. The participant is the named plaintiff, and the attorney, in fact, is the one who's actually operating on their behalf. Am I understanding your argument? In this case, yes. All right. So one of the things I am struggling with is the union, as I understand it, is arguing, well, you aren't really, you, and when I say you, I mean your client, isn't really litigating as an attorney, in fact. Because if you look at the complaint and the demand for relief, it's a demand for relief by way of payment directly to the doctor rather than relief to the patient. And so that, the union argues, undermines your claim that you're truly operating with the fiduciary responsibilities of a power of attorney. Can you just respond to that? Yes, I can. The complaint does not ask for payment directly to the doctor. And, in fact, the person who is granted the power of attorney does not bring the claim in his own right, or on his own behalf, in his own name, or in standing in the shoes of the planned participant. So it most definitely is not that- So when you say relief sought is the payment of unpaid benefits to the plaintiff, you mean to the participant beneficiary? Yes. So how do you square that with paragraph 27, which alleges that plaintiff received a POA from patient? At least for purposes of that paragraph, it seems like the complaint thinks that the plaintiff is the one who's holding the POA rather than the patient. Was that just a mistaken- Well, the planned participant granted Dr. Kakari a power of attorney. That's what that means. Right, I understand that. But just the use of the term plaintiff, when we're trying to define terms, who does the complaint think is the plaintiff? At least in paragraph 27, Dr. Kakari seems to be who the complaint thinks is the plaintiff. Well, Dr. Kakari is the plaintiff who holds a power of attorney granted by the planned participant patient. Okay. So if we want to call the patient the plaintiff, that's fine. But I don't think it makes any difference because, in fact, this is not being brought by- Directly, this is not being brought by Dr. Kakari. It is being brought by the patient. So the patient's making the decisions? The patient is making the decisions as to whether to appeal or counsel to retain? All of that's being decided by the patient? No, because pursuant to a power of attorney, she checked or the patient checked the box in the power of attorney allowing the power of attorney to make a decision. Powers of attorney are used all the time. I'm sorry? Powers of attorney enable people to allow others to write checks for them and to negotiate contracts for them, et cetera. But it's not an assignment. Correct. You seem to be arguing as though it is the same as an assignment. No, I'm not. Okay. No, I'm not. But then you seem to be saying that your client is not the plaintiff here, that it's J.N. who's the plaintiff here, and I don't see any authority for that proposition. Having a power of attorney means you bring the case in your own name, but you're treated as though you are the patient. What's your best case for this proposition? My best case is in the Third Circuit, which has allowed power of attorneys in these situations exactly. In University's Fine Center, which is a Third Circuit case, there were three Third Circuit cases. The Third Circuit held, well, most recently observed that a patient pursuant to a validly granted power of attorney may confer on its agent, including health care providers, the authority and hence standing to assert an arista claim on his or her behalf. Okay. So, I mean, you don't have a best case in the Second Circuit, do you? The Second Circuit has not held one way or the other. Well, the Second Circuit has clearly held that a power of attorney doesn't give you Article III standing. So if you don't have Article III standing, that's first base, and then you're done. But you think that the Third Circuit has passed on whether or not a power of attorney gives you Article III constitutional standing? One way or the other, the court has, in fact, upheld it. Well, I don't know that it's even been addressed, is the question. You're over time, and I know you've reserved some rebuttal time. I also wanted to just talk about whether you've got the right defendant here. I mean, ordinarily, a claim for benefits under this section of ERISA is brought against the plan or maybe a plan of fiduciary. You've brought it against the union, right? It can be brought against the plan sponsor as well. But that's an issue that even if we're wrong, that's an issue that can be resolved in an amendment to the complaint. Well, I mean, that may be. I think that that's probably right, but why would you be bringing this against the union instead of the plan? Because the union is the plan sponsor. Okay, but you think that the law in this circuit is that you get to just pick whatever you want, the plan sponsor, the plan. We make no distinctions. These are sort of just legal niceties that don't matter. No, of course not. So what would be the basis for bringing a claim against the union as opposed to the plan? Because the union is the plan sponsor. So your view again? Okay, so your view is that the sponsor of the plan can always be sued for benefits denied by the plan? Yes. Okay. What's your case for that? I don't have it in front of me. All right. Let's stop there. We'll hear from Mr. Keene and Mr. Axelrod. You have three minutes for rebuttal. We'll get back to you. Okay, Mr. Keene, you may proceed. Good morning, Your Honors. As an initial matter, and I think this has already sort of been addressed on argument, plaintiff appellant has not identified any case law on the Second Circuit that would permit him to bring this claim based on a power of attorney, not just an assignment, without an assignment. I think Judge Brown's decision from the Eastern District very clearly addressed what the relevant case law in this circuit is, requiring a plaintiff to obtain an assignment. Yeah, I mean, a little muddy as to whether that's a statutory standing, which is not really standing, or constitutional standing. But certainly recognizing that an assignment is different from a power of attorney. I get that. Go ahead. Are you in the middle? Yeah, no, I was going to. Go ahead. Jump in. No, please. I'm trying to figure out whether once we define the question a certain way, it dictates an answer, but we're defining the question wrong. Let's assume that the law is that the fact that somebody holds a power of attorney doesn't mean that they can pursue a claim in their own right. Let's assume that's true. You're not contending that an individual can't pursue legal relief in court through a power of attorney, in a claim in which they have a clear statutory constitutional right to proceed. No, I don't think we're making that argument. As has been observed, the power of attorney is functionally different than an assignment. Absolutely. What I'm trying to figure out is, if you just put in a Westlaw search, there's tons of cases in the Second Circuit, in the district courts, and in our court, where people proceed through an attorney in fact who's acting with the power of attorney. More often, they're captioned Joe Smith buying through their attorney in fact so and so, but sometimes they're captioned so and so on behalf of Plaintiff Smith. And I'm just trying to figure out whether this is a caption issue, that if the caption had been patient, buying through attorney in fact car car, whether you would be making the same claim, and how this would be different from any other case, in which somebody asks their attorney in fact to pursue a claim on their behalf. Well, I think in the ERISA context, and in section 502 of ERISA, the statute itself is very clear. You have to be a participant or a beneficiary. And courts in the Second Circuit, when addressing this, have recognized that that is a clear and distinct limitation on the universe of potential plaintiffs. Well, I mean, but an assignment is permissible, right? That's not in the statute. But the statute's been interpreted to permit assignments of claims by a participant or beneficiary to somebody else, right? In a very limited circumstance, they've permitted an assignment to a health care provider who is seeking to recover the benefits for medical treatment that was provided. Notably here, Dr. Kakare is not- Well, here there's no assignment. Right. So it doesn't matter. There's no assignment at all. Is there an anti-assignment clause in this plan? Is there a provision in this plan that prohibits a beneficiary or participant from assigning claims? Not in my review of the summary plan description. In fact, the Third Circuit case that your opponent cites really focused on an anti-assignment clause and whether that precluded the assignment of the right to sue by that patient beneficiary to the health care provider and ultimately concluded the power of attorney was insufficient for that health care provider, no? Well, in the main Third Circuit opinion in which all of his other Third Circuit opinions rely upon, they upheld the power of an anti-alienation provision in the plan documents. Looking at the power of attorney in the original Third Circuit opinion, they noted that it had not been raised at the lower court level, so it was not fully addressed by the Third Circuit in the American orthopedic. Orthopedic and sports versus independence, Blue Cross Blue Shield. Yes. Thank you, Your Honor. Now, the Third Circuit in the university's Spine decision referred to that language as dicta, where they did not find that it was a ruling. They found it was dicta. They found that it was something that the Third Circuit entertained, but ultimately in the university's Spine decision, the Third Circuit upheld the dismissal from the District of New Jersey because the plaintiff there did not have standing in the original action in the District of New Jersey, and so the Third Circuit wouldn't permit him to amend the complaint to create standing where there was no standing before. And even in the Third Circuit case, the court notes the difference between what powers a power of attorney confers versus an assignment. That is correct. I want to understand the ramifications of your argument. If there's a planned participant who's under guardianship, can the guardian, and it's a full guardianship, not just medical or whatever, it's full guardianship, can the guardian initiate litigation on behalf of the ward? That I'm not clear on, because I think that is a different circumstance. That's an open question as to whether somebody who's incapacitated and unable to sue your client in their own right can have a guardian do it on their behalf. There's a question about that? There may not be an open question of law on that. I'm not personally, I didn't see anything on that. Anything in the researching for this brief that would permit. Okay, so you have questions about whether it would be, you might contest that. Potentially, but I can't, but I'm not, yeah. So there's something about this kind of case that the ordinary course of representational authority doesn't apply as it relates to a guardian or could be. Let's assume the same person who's under guardianship, I kind of figured you'd go the other way on that one, so this hypothetical, but let's assume the same person who's under guardianship isn't under guardianship but is quite feeble. And maybe they have a partial voluntary guardianship for some purposes. And they issue a power of attorney to somebody other than the doctor or whose medical bills are at issue here. Is it your position that a suit by that patient slash participant, by and through their attorney, in fact, who's got a valid power of attorney, Joe, power of attorney, would be subject to dismissal because this feeble patient has to bring the suit themselves? Well, I think in both of these, the feeble patient and in the guardianship, I think there is a distinction between having a guardian who is responsible for someone who is incapable of taking care of themselves versus a doctor who billed the patient $150,000 for a procedure, which the insurance fund thinks is far too much, and the patient's family member who takes care of them in every other aspect of their life. So this gets to what I think is really going on here. It's not that your position is that somebody with a valid power of attorney can't represent their clients or their, I don't know, word isn't the right word, but interests through litigation. They can't, in a representational capacity, bring litigation on behalf of that person. Your position is really that this isn't a bona fide power of attorney. No, I'm sorry to interrupt, but no, Your Honor, I don't think this is a valid power of attorney. I think the language you cited in the complaint at paragraph 27 and also in paragraph 33 of the complaint talks about AA Medical's claims against the ERISA plan. It's not talking about the plaintiff or the patient being made whole. It's talking about AA Medical, the healthcare provider being made whole. Once you recognize that the potential problem here is that we have doubts about whether this really is a power of attorney as we understand it, rather than whether someone can issue a power of attorney to a fiduciary to litigate on their behalf. Don't you have to at least have some sort of evidentiary presentation about what, in fact, the relationship is between the patient, what fiduciary duties Dr. Karkar has taken on, whether he's complied with state law power of attorney requirements in the terms of the execution of the document itself. And in terms of how he's proceeding, whether the patient's ultimately calling the shots at the level that somebody who's got a power of attorney. Don't you have to not make assumptions about whether it's bona fide, but actually test those? Well, in this case, we were prevented from doing so because the power of attorney is actually not part of the record here. It was never submitted to the lower court. I don't know that a power, I don't know, I think the power of attorney would be something that the court could review on its face to confirm that it confirms. That it is actually a power of attorney. I don't know that an evidentiary hearing is necessary. Right, but it's not part of the record. That's correct. It was never submitted as part of the record. I'm just trying to figure out, I think you're entitled to poke around and figure out whether it's a legitimate power of attorney. So it doesn't sound like you're saying that the brother or sister or parent or caregiver who's not also the recipient or the potential recipient of the money that they get. You're not saying they couldn't, in that capacity and as a fiduciary, bring a claim? We would have to review the facts of the case, but potentially, yes, I think that's different. Okay, that's- Is your position, to try to understand your position, is that the power of attorney here does not operate as an assignment to vest that attorney, or vest in this case Dr. Kakar, with title and interest to enable him to maintain the suit in his own name as the plaintiff? Yes, I think the complaint is for the benefit of Dr. Kakare, an AA medical who Dr. Kakare is affiliated with. I don't think the complaint is for the benefit of the patient, and I think on those facts that you would need an assignment to do so. Okay, but Mr. Keene, it seems to me that this really is a caption problem, so if we were to go with you on this and dismiss, it seems to me it has to go back to the district court, and the district court then has to give, at the very least, the plaintiff an opportunity to substitute in the right party, right? Do you agree with that under Rule 17? I mean, JN, it would seem to me, is allowed to come into this thing as the proper party under Rule 17 before this thing gets dismissed. And it also seems that JN could do an assignment, and then under our case law, that would give Dr. Kakare the standing to proceed. I thought you agreed that that would be appropriate. Yes, if there was a valid assignment here, there would be- And there's nothing that prevents there from being an assignment, as far as you know, right? To the best of my knowledge. So, it just seems that right now we are dealing with sort of formalistic, not unimportant, considerations about the caption and who has standing. But at the end of the day, there should be a dispute here that gets to go forward, right? If JN wants to litigate this thing, probably against the plan and not the, I want to ask you to speak to that briefly, the plan as opposed to the union. That's exactly what an erisic claim is supposed to be, a participant or beneficiary suing a plan for failure to provide benefits under the plan, right? Yes, the statute does authorize a participant or a beneficiary to bring the claim. I agree with you, I think this would be against the plan, not the union. Without looking too far ahead, I think there's probably going to be a question and a motion to dismiss based on the plan thinking that it's paid everything it's supposed to pay. But that is probably- Well, that would be a merits, maybe it's a pleading problem, but otherwise it's a merits question. So, all right, well, we've gone way over, let me just see if there's any other questions from the colleagues. But let's hear from Mr. Axelrod for three minutes. Thank you, Your Honor. I would point out that a power of attorney can in fact be granted to anybody not just a provider. That came up in the back and forth. But a provider is often in a better position to be granted a power of attorney because the provider knows the medical information, such as the surgery, that needs to be pled in the complaint. So I would point that out. So what's preventing you from just getting an assignment instead of a power of attorney? I was not aware when, I was under the impression that there was an anti-assignment provision in the plan. The plan's not in the, I'm sorry, the plan is not in the record, right? The plan itself, we don't have that. I don't think that the plan is in the record, I have a copy of the plan. So you would know better than we do whether there's an anti-assignment provision, but- I'm hearing that there is not, but it was my impression in reviewing the plan document that there was. Okay, sorry. No, no, my apologies to you. My question is, and it was a quick follow up to, you said you were not aware that there was no assignment here, but there have been other cases that your client has brought on the same theory with the power of attorney that have been dismissed for a lack of an assignment. So it's not as if your client wasn't aware there needed to be an assignment. Well, that's not the issue. The issue is not whether my client was aware or not aware. No, I know that, but I'm just, this is not news to that particular group that a power of an attorney has been challenged as not permitting giving standing to bring a suit of this type. That's why I'm in the Second Circuit. Because I wanted to have the Second Circuit hold that a power of attorney was in fact sufficient to provide a wrist of standing. We have had cases dismissed on that basis, and that's why I'm here. I think you gotta first get Article III standing. And I want to make sure I'm understanding, because that's actually, the way you just worded that isn't the way I understood you to be arguing it. I thought you were arguing that the standing belongs to the real party in interest. The patient slash participant. You don't need standing for the person who's representing them. That's the concept of standing is a- That's correct. Doesn't make sense. That's correct. And so your position is that just like in any other case, and there's hundreds of them on Westlaw. Somebody OBO, fill in the name. The fill in the name has to have standing, and it has to be legitimate. You have to be able to establish the legitimacy of the representational capacity, which is a little odd that it wasn't attached to the complaint, I have to say. But am I right in understanding your position that if it's a bona fide power of attorney, then there's no reason why Dr. Law from acting in the representational capacity in the litigation any more than any other family member or guardian or somebody else who's acting in a representational capacity. That's absolutely correct, Your Honor. Thank you. That's correct. Well, we reserve decision. Thank you both.